**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| DOYLE BINGHAM,<br><br>Plaintiff,<br><br>v.<br><br>DR. DANA MARKS, *et al.*,<br><br>Defendants. | Case No. 3:23-CV-00456-ART-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]<br><br>[ECF Nos. 68, 70, 80] |

Currently pending before the Court are Plaintiff Doyle Bingham's ("Bingham") motion for a preliminary injunction, (ECF No. 70), and two motions to exceed the page limits prescribed by this Court's Local Rules, (ECF Nos. 68, 80). For the reasons discussed below, the Court recommends all three motions be granted.

## I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

### A. Procedural History

Bingham is an inmate in the custody of the Nevada Department of Corrections ("NDOC") housed at Lovelock Correctional Center ("LCC"). (ECF No. 7 at 1.) Bingham suffers from a chronic bowel disorder that causes him severe abdominal pain and to use the restroom up to 10 times per day. (*Id.* at 4-14.) Bingham filed a *pro se* civil rights complaint alleging he has suffered from this disorder since his arrival at LCC around 2016 yet has not been properly diagnosed or treated. (*Id.*) The Court screened Bingham's complaint pursuant to 28 U.S.C. § 1915(a) and permitted three claims to proceed: (1) Defendants were deliberately indifferent to Bingham's serious medical need in violation of the Eighth Amendment; (2) Defendants conspired to deprive Bingham of his constitutional rights; and (3) Defendants failed to provide Bingham with reasonable

---

[1] This Report and Recommendation is made to the Honorable Anne R. Traum, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

accommodations in violation of the Americans with Disabilities Act ("ADA"). (ECF No. 10 at 13.)

Along with his complaint, Bingham also moved for a preliminary injunction requiring Defendants to properly diagnose and treat his bowel disorder, place him in single-cell housing until his disorder is resolved, and place him on an appropriate medical diet. (*Id.* at 12.) The Court denied Bingham's motion in the hopes the parties would resolve the issue at mediation, but stated Bingham could refile his motion if they were unable to do so. (*Id.*) The parties did not settle at mediation, (ECF No. 16), and Bingham now renews his request for injunctive relief.

**B. Factual Background**

When Bingham was first incarcerated, he was housed at High Desert State Prison ("HDSP"). (*See* ECF No. 73-2 at 19.) Beginning in late 2016, Bingham began submitting kites to medical complaining of bowel issues. (*Id.*) Bingham asked for Metamucil noting he had suffered from bowel issues "for a long time" and that fiber supplements had "work[ed] well for [him]" in the past. (*Id.*) It appears Bingham was regularly given a fiber supplement, albeit sometimes delayed, until he was transferred to LCC in June 2017. (*See id.* at 11-12, 20.)

When Bingham was transferred to LCC, HDSP noted on his transfer sheet that he suffered from chronic gastrointestinal ("GI") issues. (*Id.* at 13.) It appears Bingham's GI issues worsened after he arrived at LCC because he submitted multiple kites complaining of worsening symptoms and extreme bouts of diarrhea. (*Id.* at 14-15, 21.) Bingham continued to receive a fiber supplement, (*id.* at 16-17, 22-23; ECF No. 73-5 at 48), and after a medical visit in December the provider noted Bingham suffered from "classic IBS symptoms," (ECF No. 73-2 at 16).

Though the record is scant, it appears Bingham's GI issues and fiber supplementation continued through 2018. Bingham submitted two kites — one in April and one in November — asking to be seen about his stomach problems, (*id.* at 9, 25), and in August an order to renew his fiber supplement was entered, (*id.* at 24). In March

2019, Bingham submitted two kites stating his GI issues were "getting worse," (ECF No. 73-4 at 49), and that he was "having black stools," (ECF No. 73-2 at 27). Bingham was seen by a provider, who noted he was in pain and had "multiple fluid stools per day." (*Id.* at 28.) The provider also noted Bingham had a history of inflammatory bowel disease ("IBD"), the probable culprit for his symptoms, and a family history of Chron's disease. (*Id.*) Bingham was prescribed Budesonide, a steroid used to treat Crohn's disease (an inflammatory bowel disease),[2] Azulfidine, a medication used to treat ulcerative colitis, (ECF No. 74-2 at 52-53), Medrol, a steroid used to treat ulcerative colitis,[3] and Prilosec, a medication used to treat conditions related to excess acid in the stomach, (*id.* at 8-9). (ECF No. 73-2 at 26, 28.)

These prescriptions appear to have been ineffective, however, because five months later Bingham submitted a kite stating his "stomach hurts all the time" and he "always need[s] to poop." (*Id.* at 31-32.) Bingham also noted he had been told he would be referred for a colonoscopy six months prior but still had not. (*Id.* at 32.) Shortly thereafter, Bingham was enrolled with the chronic disease clinic for his GI issues, (*id.* at 30, 34), and medically reclassified as needing periodic examinations, (*id.* at 33). In the comments section of his reclassification form, the provider noted Bingham had "Irritable Bowel Disease." (*Id.*) Bingham's prescriptions for Azulfidine and Prilosec were also renewed, and the provider ordered a follow up after a month to assess whether another steroid prescription was warranted. (*Id.* at 30.)

Bingham's stomach issues continued, and he was seen by a provider again in October. (*Id.* at 39.) The provider renewed Bingham's Azulfidine prescription, ordered another round of Medrol, and prescribed several new medications. (*Id.* at 30.) The

---

[2] *Budesonide (oral route)*, Mayo Clinic, https://www.mayoclinic.org/drugs-supplements/budesonide-oral-route/description/drg-20073233

[3] *Methylprednisolone (oral route)*, Mayo Clinic, https://www.mayoclinic.org/drugs-supplements/methylprednisolone-oral-route/description/drg-20075237

provider prescribed Mesalamine, a medication used to treat ulcerative colitis,[4] Bentyl, a medication used to treat irritable bowel syndrome, (ECF No. 74-2 at 2), Prednisone, a steroid used to reduce inflammation in the bowels, (*id.* at 37), and Reguloid, a fiber supplement.[5] (ECF No. 73-2 at 30, 36, 38-39.)

In January 2020, Bingham submitted a kite stating his abdominal pain had been worsening over the past few weeks and was now at an eight out of ten. (*Id.* at 41, 46.) Bingham described it as a "severe, sharp shooting pain in the left side of [his] stomach," and noted he was having alternating diarrhea and constipation. (*Id.* at 41.) Bingham was taken to the emergency room that same day and received a CT scan of his abdomen. (ECF No. 73-6 at 47, 49.) The provider noted the scan was unremarkable and "[n]o diverticulitis [was] seen." (*Id.* at 49.) Ultimately, the provider concluded the source of Bingham's pain was "unclear" and discharged him with a prescription for ibuprofen. (*Id.*)

Bingham continued with his medications, (ECF No. 73-6 at 28), but his problems persisted, (ECF Nos. 73-4 at 29; 73-14 at 9; 73-15 at 8). Bingham was seen by a provider, (ECF No. 73-2 at 42), but there are no notes from the visit save for an order to discontinue the Bentyl, (ECF No. 76-1 at 3). Bingham's pain continued through March, (ECF Nos. 73-2 at 42; 73-4 at 24; 76-1 at 4), resulting in him being referred to a gastroenterologist, (ECF Nos. 73-2 at 43, 45; 73-20 at 6.) It appears that despite the referral being approved Bingham was never actually scheduled with an outside provider. There is no evidence in the record Bingham saw a gastroenterologist in 2020, and in his motion Bingham states he "did not see a specialist" "[b]etween 2020 and 2023." (ECF No. 70 at 6.) The record is silent as to Bingham's progress for the rest of 2020.

Somewhere around this time, the provider that had been treating Bingham, Dr. Adamson, left LCC and was replaced by Defendant Dr. Dana Marks ("Marks"). (*See* ECF

---

[4] *Mesalamine*, Mayo Clinic, https://www.mayoclinic.org/drugs-supplements/mesalamine-oral-route/description/drg-20064708

[5] *Psyllium (Metamucil, Konsyl, and others) – Uses, Side Effects, and More*, WebMD, https://www.webmd.com/drugs/psyllium-husk-fiber

No. 72 at 5.) After Marks took over Bingham's care, there is no evidence Bingham continued to receive any of the medications discussed above. Indeed, Bingham states Marks prescribed him only Pepto-Bismol after reviewing his medical history in 2021. (*Id.*) This is supported by the record. In January 2021, Bingham submitted a kite stating he had taken the Pepto-Bismol, but it had not worked; it had not relieved any symptoms, and he was still "in constant pain." (ECF No. 73-9 at 17.) Then, in December, Bingham submitted another kite stating he was still in pain and having to use the bathroom five to ten times per day. (ECF No. 73-10 at 8.) In response, Marks ordered that Bingham be given a three-month supply of Pepto-Bismol (notwithstanding the fact Bingham told them Pepto-Bismol was ineffective 11 months beforehand). (ECF No. 76-1 at 5.) There are no other relevant medical records from 2021 in the record.

Bingham was seen by a nurse in February 2022 and informed her he was still in pain and that the Pepto-Bismol was ineffective. (*Id.* at 6.) The nurse noted Bingham would be scheduled to see a doctor. (*Id.*) It appears this did not happen because in April Bingham submitted a kite stating he had been told "repeatedly" he would see a doctor but never did. (ECF No. 73-9 at 5.) A staff member provided the following response: "Given Pepto-Bismol (not working per IM)." (*Id.*) The staff member also noted Bingham was scheduled to see a doctor on November 2. (*Id.*) Bingham submitted several more kites throughout 2022 stating he was in severe pain and asking to be seen by a doctor. (*See* ECF Nos. 73-9 at 6, 9-10, 12.) Between April and November Bingham was only given Pepto-Bismol for his GI issues. (ECF No. 76-1 at 7.)

On November 2 Bingham saw Marks, who ordered several tests. (*Id.* at 8.) Marks also restarted Bingham on Prednisone and Sulfazine (another name for Azulfidine, (ECF No. 74-2 at 52)), and prescribed him Simethicone (another name for Gas-X, (*id.* at 29)). (ECF Nos. 76-1 at 8; 73-2 at 50.) In the progress notes from this visit, Marks noted Bingham had previous diagnoses for irritable bowel syndrome ("IBS") and Chron's disease. (ECF No. 76-1 at 9.) However, Marks appeared unsure about what Bingham's underlying issue was because he wrote: "Chronic GI symptoms — IBS vs. Chron's vs.

[Ulcerative Colitis] vs. Sprue[6] — will start [workup].” (*Id.*)

The record is silent until April 2023 when Bingham saw Marks again for a follow up. (*See* ECF No. 73-3 at 9.) Marks noted some of Bingham’s symptoms had improved but were returning. (*Id.*) Marks discussed the lab work with Bingham which he concluded supported a diagnosis of Chron’s disease. (*Id.*) Marks renewed Bingham’s prescriptions for Sulfazine and Simethicone and restarted him on Bentyl (also known as Dicyclomine, (ECF No. 74-2 at 2)). (ECF No. 76-1 at 37, 45.) Marks also ordered additional testing and that Bingham be placed on a bland diet and referred to a gastroenterologist. (*Id.*; *see also* ECF No. 73-12 at 18.) A few weeks later, Bingham was approved to see a gastroenterologist for a “possible diagnosis of chron’s disease & subsequent colonoscopy.” (ECF Nos. 73-20 at 24; 73-21 at 27.)

While waiting to be scheduled with the gastroenterologist Bingham continued to receive Bentyl, Sulfazine, and a bland diet.[7] (ECF Nos. 76-1 at 47; 73-8 at 8, 11, 16-17, 19; 73-12 at 16-17; 76-1 at 31-33.) Bingham eventually saw the gastroenterologist in October. (*See* ECF Nos. 73-20 at 25; 73-21 at 1-2.) The gastroenterologist recommended Bingham be placed on a high-fiber diet, begin taking Colace to help soften his stool, and begin taking Omeprazole (another name for Prilosec, (ECF No. 74-2 at 8-9)) in place of

---

[6] Sprue is a tropical disease “characterized by acute or chronic diarrhea.” Eric Goosenberg *et al.*, *Tropical Sprue*, Nat’l Ctr. for Biotechnology Info., https://ncbi.nlm.nih.gov/books/NBK567742/?report=printable (last updated Sept. 14, 2025). Prue is prevalent in tropical regions such as Puerto Rico, Haiti, and Cuba, and only “isolated cases” have been reported in the United States. *Id.* To contract Sprue, a person typically must spend more than one month in an area where it is present. *Id.* It is unclear why Marks suspected Sprue might be the underlying cause of Bingham’s problems as he had been in prison and unable to travel to regions where Sprue is present.

[7] During this time, it appears Bingham contracted giardia, a parasitic infection that causes diarrhea. (ECF No. 74-3.) On May 17, 2023, a lab report shows Bingham tested positive for giardia, but another report from May 21 shows he tested negative. (ECF No. 76-1 at 11, 13.) It is unclear why the two reports differ since they were both generated from samples collected on May 12. (*Id.*) In any event, Bingham was apparently prescribed medication and the issue was resolved. In a kite from July 2023, Bingham stated he finished the anti-parasite medication a few weeks prior, and his number of bowel movements had decreased to seven per day. (ECF No. 73-8 at 16.)

Tums. (ECF No. 73-21 at 2.) Furthermore, the gastroenterologist recommended Bingham be scheduled for an esophagogastroduodenoscopy ("EGD") and colonoscopy with an extended two-day prep. (*Id.*) Shortly thereafter, Marks prescribed Bingham Metamucil, Colace, and Omeprazole. (ECF No. 73-3 at 11.) Marks submitted a request for Bingham to receive an EGD and colonoscopy in November, which was approved in December. (ECF Nos. 73-21 at 29-30.)

Bingham continued his medications and bland diet throughout 2024. (ECF Nos. 76-1 at 20-26, 70; 73-12 at 10, 14; 56-1 at 56, 60; 73-3 at 15; 73-19 at 25.) Nevertheless, Bingham's GI issues persisted. (ECF Nos. 73-7 at 25; 76-1 at 55; 73-15 at 2; 73-18 at 16.) In January 2024, LCC reached out to GI Consultants to schedule Bingham's EGD and colonoscopy but was told they were not accepting patients from NDOC. (ECF No. 73-20 at 22.) In June, LCC reached out to Digestive Health Associates in Reno, the same specialist that recommended the EGD and colonoscopy, but apparently never received a response. (ECF Nos. 73-20 at 18; 74 at 5.) There is <u>no</u> evidence indicating LCC followed up with Digestive Health Associates or made any attempt to schedule Bingham at another facility for the remainder of 2024.

Bingham's medical records show he remained on the same treatment plan throughout 2025, (ECF Nos. 76-1 at 63-65, 67-69, 71;73-17 at 15-16;73-3 at 17-18, 22-23, 25-26;73-19 at 6-7), and that he continued to have GI issues, (ECF No. 73-18 at 11, 14-15, 21; 73-19 at 1). In March 2025, LCC submitted another scheduling request to Digestive Health Associates, (ECF No. 73-20 at 16), but again did not receive a response, (ECF No. 74 at 6). LCC then reached out to Carson Tahoe GI and scheduled Bingham for an evaluation — <u>not</u> a colonoscopy or EGD — on April 24. (ECF No. 73-20 at 7, 13.) The provider at Carson Tahoe recommended Bingham continue his treatment plan and be scheduled for an EGD and colonoscopy. (*Id.* at 10.) It is unclear why Bingham was brought in for an evaluation, something he had already had, and not a colonoscopy or EGD.

///

Marks saw Bigham again in July for a follow-up, but it does not appear he ordered any change in treatment. (ECF Nos. 73-3 at 21; 76-1 at 71.) To date, Bingham has not had a colonoscopy or EGD. (ECF No. 72 at 5.)

## II. LEGAL STANDARD

The purpose of a preliminary injunction or temporary restraining order is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 9 (2008) (quotation marks and citation omitted). A motion for preliminary injunction requires the Court determine whether the plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *See id.* at 20 (citations omitted).

An even more stringent standard is applied where mandatory, as opposed to prohibitory, preliminary relief is sought. The Ninth Circuit has noted that although the same general principles inform the court's analysis, "[w]here a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction." *Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984); *see also Comm. of Cent. Am. Refugees v. Immigr. & Naturalization Serv.*, 795 F.2d 1434, 1442 (9th Cir. 1986). Thus, an award of mandatory preliminary relief is not to be granted unless both the facts and the law clearly favor the moving party and extreme or serious damage will result. *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (quoting *Anderson v. United*

*States*, 612 F.2d 1112, 1114 (9th Cir. 1979)).

Finally, the Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, section 3626(a)(2) limits the Court's power to grant preliminary injunctive relief to inmates. *Gilmore v. California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a)(2) . . . operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators — no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

Where the motion for preliminary injunction is related to new allegations of misconduct — distinct from the allegations at issue in the complaint — such a motion must be denied. *See, e.g.*, *Padilla v. Nevada*, No. 2:08-cv-410-LRH-RAM, 2011 WL 2746653, at *8 (D. Nev. June 3, 2011) (denying request for preliminary injunction unrelated to claims in the complaint); *Mitchell v. Haviland*, No. 2:09-cv-3012-JAM-KJN, 2014 WL 458218, at *2 (E.D. Ca. February 4, 2014) (denying motion for preliminary injunction where the conduct asserted in the motions is based on new assertions of misconduct unrelated to the acts of misconduct asserted in the complaint); *Burton v. Paramo*, No. 3:17-cv-1953-BEN-KSC, 2017 WL 6048805, at *4 (S.D. Ca. Dec. 5, 2017) (denying motion for preliminary injunction seeking injunction claimed retaliation for bringing underlying lawsuit because those acts were separate from claims asserted within the complaint itself.)

A preliminary injunction is an extraordinary remedy never awarded as of right. *Winters*, 555 U.S. at 24. Therefore, as a threshold matter, the court lacks authority to

issue injunctive relief when there is no "relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) (citing *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)). Thus, the moving party must establish there is a sufficient nexus between the claims raised by the injunctive relief motion and the conduct asserted in the underlying complaint. *Id*.

**III. DISCUSSION**

**A. Motions to File Excess Pages (ECF Nos. 68, 80)**

The Court will first address Bingham's two motions to file excess pages. Bingham's initial motion for injunctive relief and his reply in support both exceed the page limit prescribed by this Court's Local Rules. *See* LR 7-3(b). Accordingly, Bingham filed motions seeking leave to exceed the prescribed page limits. (ECF Nos. 68, 80.) Defendants did not file a response which, under Local Rule 7-2(d), "constitutes a consent to the granting of the motion." The Court therefore recommends both motions be granted, and the Court will consider both overlength filings in their entirety in its analysis below.

**B. Motion for Preliminary Injunction (ECF No. 70)**

The Court will next address Bingham's motion for a preliminary injunction. Defendants argue Bingham's motion is barred because he failed to exhaust his administrative remedies, but even if he had properly exhausted his claim, his motion nevertheless fails on the merits. The Court will begin with Defendants' exhaustion argument.

**1. Exhaustion**

Under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The requirement's underlying premise is to "reduce the quantity and improve the quality of prisoner suits" by affording prison officials the "time

and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id.* at 524-25.

Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The defendant bears the burden of proving that an available administrative remedy was unexhausted by the inmate. *Albino*, 747 F.3d at 1172. If the defendant makes such a showing, the burden shifts to the inmate to "show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172).

Here, Defendants argue Bingham "did not file a single grievance notifying the facility that he believed he requires a colonoscopy or EGD." (ECF No. 74 at 12.) As Bingham points out, however, Defendants' argument is belied by the record. (ECF No. 81 at 14.) On July 1, 2022, Bingham filed Grievance # 20063139408 asserting he was not receiving effective treatment for his GI issues, and, in his First Level Grievance, he specifically noted he had requested a colonoscopy. (ECF No. 74-5 at 20.) Furthermore, Bingham properly exhausted this grievance through the Second Level as required by Administrative Regulation 740. (*Id.* at 21-22; *see also* ECF No. 74-6 at 11-16 (providing that inmates must appeal through Second Level to properly exhaust their claims)).

Accordingly, the Court finds Bingham properly exhausted his claim and recommends Defendants' argument to the contrary be rejected.

///

///

///

///

///

**2. Merits**

The Court will now address the merits of Bingham's motion for a preliminary injunction, starting with likelihood of success on the merits.

**i. Likelihood of Success on the Merits**

The underlying claim implicated by Bingham's request for injunctive relief is his claim that Defendants acted with deliberate indifference to his serious medical need. (*See* ECF No. 10 at 13.) To prevail on a deliberate indifference claim, Bingham must meet "both an objective standard — that the deprivation was serious enough to constitute cruel and unusual punishment — and a subjective standard — deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014)).

To satisfy the objective standard Bingham "must demonstrate the existence of a serious medical need" — *i.e.*, a condition that left untreated could result in further injury or unnecessary pain. *Id.* (first quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); and then citing *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). The Ninth Circuit has identified three situations which indicate a medical need is serious: (1) "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (2) "the presence of a medical condition that significantly affects an individual's daily activities;" or (3) "the existence of chronic and substantial pain." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled in part on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)).

To satisfy the subjective standard, Bingham must demonstrate Defendants were deliberately indifferent by showing they knew of and disregarded an excessive risk to his health and safety. *Id.* (citing *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004)). This can be done by showing Defendants denied, delayed, or intentionally interfered with Bingham's medical treatment. *Id.* (citing *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). To prevail on a claim based on delay of treatment, Bingham must show

that the delay caused him further harm. *Shapley v. Nev. Bd. Of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985); *see also Egberto v. Nev. Dep't of Corrs.*, 678 Fed. Appx. 500, 504 (9th Cir. 2017). However, Bingham "need not show his harm was substantial." *Jett*, 439 F.3d at 1096.

Here, Defendants argue Bingham is unlikely to succeed on the merits because he consistently received treatment for his GI issues, and, in any event, it was not medically necessary for him to receive a colonoscopy[8] and his argument to the contrary is simply a difference of opinion, which is not actionable under the Eighth Amendment. (ECF No. 74 at 3-6.) The Court will first address Defendants' argument that Bingham consistently received treatment.

Defendants argue Bingham is unlikely to succeed on his underlying claim because his medical records show he consistently received treatment for GI issues, and he therefore cannot show Defendants acted with deliberate indifference.[9] (*Id.*) Defendants point out Bingham was taken to the emergency room, received medications aimed at treating his GI issues, and saw two outside specialists. (*Id.*) The Court agrees Bingham was not denied treatment altogether, but that does not mean he cannot succeed on his deliberate indifference claim. *See Snow*, 681 F.3d at 986 (noting an inmate "need not prove that he was completely denied medical care" to prevail on a deliberate indifference claim). Bingham can establish deliberate indifference by showing Defendants "persist[ed] in a treatment *known to be ineffective*" or *delayed* in providing him treatment. *Stewart v.*

[8] Rather than clunkily repeat "colonoscopy and EGD" throughout this order, the Court will instead use only the word "colonoscopy" to refer to both tests.

[9] Although not challenged by Defendants, the Court notes the record indicates Bingham's condition constitutes a serious medical need. Several providers have found Bingham's GI issues worthy of treatment, (ECF Nos. 73-2 at 16-17, 22-24, 28, 30, 38, 43, 45; 73-3 at 9, 11; 73-6 at 47, 49; 73-15 at 6, 9; 73-19 at 6-7; 73-20 at 9-11, 23-25; 73-21 at 1-2, 29; 76-1 at 3, 5, 7-9, 45, 47, 49, 56, 60, 71), Bingham's daily activities are significantly affected by his need to use the toilet multiple times per day, (ECF No. 7 at 21-25), and he has reported being in severe and chronic pain for years, (ECF No. 72 at 2-9). Furthermore, Bingham was enrolled in the chronic disease clinic for his GI issues which, per NDOC criteria, is reserved only for inmates suffering from serious medical conditions. (ECF No. 73-2 at 34; 73-3 at 21; 73-6 at 28.)

*Aranas*, 32 F.4th 1192, 1195 (9th Cir. 2022) (emphasis added). Here, the Court finds that Bingham is likely to prevail under either theory.

The record shows Bingham was consistently given the same handful of medications for years even though they were ineffective. As early as 2019 Bingham was prescribed Budesonide, Prednisone, Azulfidine, Bentyl, Medrol, Reguloid, and Prilosec. (ECF No. 73-2 at 28, 30.) Notwithstanding Bingham's repeated complaints the medications were not working, (ECF Nos. 73-2 at 41-42; 73-10 at 8; 73-9 at 9; 73-8 at 11; 73-18 at 16; 73-19 at 1), as of 2025 Bingham was still being treated with Sulfasalazine, another name for Azulfidine, (ECF No. 74-2 at 52), Dicyclomine, another name for Bentyl, (*id.* at 2), and Prilosec. (ECF Nos. 73-3 at 17-18, 22-23, 26; 73-19 at 6-7.)

Furthermore, around 2021 Bingham was repeatedly given Pepto-Bismol for his GI issues even though he had told medical staff it did not work. In January 2021, Bingham submitted a kite stating the Pepto-Bismol had been ineffective and only turned his stool black. (ECF No. 73-9 at 17.) Nevertheless, when Bingham complained of ongoing GI issues in December, he was again given Pepto-Bismol and told to let medical know whether it worked. (ECF No. 73-10 at 8.) Bingham submitted another kite in April 2022 complaining of GI issues and was again given Pepto-Bismol, even though the responding staff member noted on the kite the Pepto-Bismol was not working. (ECF No. 73-9 at 5.) It appears Bingham was not prescribed something other than Pepto-Bismol until November 2022. (ECF No. 76-1 at 8.) In other words, for approximately 22 months Bingham received treatment that LCC medical staff knew was ineffective.

As to delay in treatment, there are two glaring examples in the record — seeing a gastroenterologist and receiving a colonoscopy. Bingham was approved to see a gastroenterologist in March 2020, (ECF No. 73-2 at 43), but did not actually see one until October 2023, (ECF No. 73-20 at 25). Defendants imply this delay is excusable because of the COVID-19 pandemic, but the Court is skeptical. For one, Nevada terminated its Declaration of Emergency for the COVID-19 pandemic in May 2022. *Rodgers v. Eighth Jud. Dist. Ct.*, 541 P.3d 138 (Nev. Ct. App. 2024). Obviously, some delay, even significant

delay, is unavoidable due to the COVID-19 pandemic, but it is unclear why LCC could not schedule Bingham for roughly one and a half years after the state of emergency was lifted. More to the point, however, is that Defendants offer no actual evidence indicating COVID-19 was responsible for the delay; they offer only a passing comment in their opposition. (*See* ECF No. 74 at 4.)

With respect to the colonoscopy, Defendants argue any delay is not attributable to them because they attempted to have Bingham scheduled on three separate occasions. (*Id.* at 6-7.) LCC initially tried to schedule Bingham with GI Consultants in January 2024 but was told they did not have a contract with NDOC to see inmates. (ECF No. 73-20.) LCC then submitted two requests to Digestive Health Associates — one in June 2024 and one in March 2025 — but apparently never received responses. (ECF Nos. 73-20 at 16, 18; 74 at 5.) There is no evidence in the record suggesting anybody followed up with Digestive Health Associates, or that any additional scheduling attempts were made (at Digestive Health Associates or elsewhere) since March 2025. Defendants seem to think these attempts are all that is constitutionally required of them. The Court disagrees.

It is well established that prisons are obligated "to provide medical care for those whom it is punishing by incarceration." *Estelle*, 429 U.S. at 103. This means the prison must either hire medical staff who are "competent to examine prisoners and diagnose illnesses," or have systems in place "to refer prisoners to others who can." *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). If it is the case an inmate must see an outside provider, undue delay in scheduling that appointment can constitute deliberate indifference. *See Jett*, 439 F.3d at 1097. Thus, to satisfy the Constitution in Bingham's case, Defendants were required to ensure he was scheduled for his approved colonoscopy in a reasonable amount of time — simply attempting to schedule Bingham is not enough.[10] It has been

---

[10] This is particularly so given Defendants' complete lack of follow-up with Digestive Health Associates and effort in trying to find another outside provider who could see Bingham. If an outside provider is unable or unwilling to see inmate patients, NDOC may

almost three years since Bingham was authorized to receive a colonoscopy, but he has yet to receive one. Such a lengthy delay easily gives rise to a credible claim of deliberate indifference. *See id.* (finding a six-month delay in sending inmate to see a specialist could amount to deliberate indifference).

The Court will next address Defendants' argument that a colonoscopy was not medically necessary. (ECF No. 74 at 7-8.) Defendants' assert "there is no indication in the record that [a colonoscopy] was necessary." *Id.* at 7. For support, they point to the fact Carson Tahoe did not perform a colonoscopy when they saw him. (*Id.*) Defendants' argument is flawed, however, because it assumes Carson Tahoe was able to give Bingham a colonoscopy at his visit and chose not to because it was medically unnecessary. However, that is not the case. When Defendants scheduled Bingham with Carson Tahoe, they scheduled him for an "evaluation," not a colonoscopy. (ECF No. 73-20 at 13.) This distinction is important because a colonoscopy is not something that can be done on a whim, it requires the patient to prepare for the exam by emptying their colon.[11] And in Bingham's case, this requires an extended two-day prep. (ECF No. 73-21 at 2.) Thus, it was Defendant's actions, and not any medical determination by Carson Tahoe, that led to Bingham not receiving a colonoscopy.[12]

Furthermore, Defendants' larger argument there is no evidence in the record indicating a colonoscopy was medically necessary is unavailing. First, the initial provider

---

not simply throw their hands up in defeat. They must continue searching for other providers who are willing to see inmate patients. *See Rodriguez v. Keast*, 2025 WL 1874885, at *3 (D. Nev. July 8, 2025) (noting that when outside providers stop taking inmate patients "it is incumbent upon NDOC officials to expediently find providers who will, even if that means transporting him, temporarily, to a facility in southern Nevada, where a provider may be able to accommodate these procedures"), *report and recommendation adopted in full in* 2025 WL 2084900 (D. Nev. July 23, 2025).

[11] Mary Anne Dunkin, *How to make colonoscopy prep easier*, Mayo Clinic Press, https://mcpress.mayoclinic.org/healthygut/how-to-make-colonoscopy-prep-easier/

[12] The Court finds this fact particularly confusing. It is unclear why Defendants went through the trouble of transporting Bingham to Carson Tahoe, who apparently has no issue seeing inmates, for a duplicative evaluation instead of a colonoscopy.

who saw Bingham in October 2023 listed a colonoscopy as part of Bingham's treatment plan, he did not "recommend" it as Defendants suggest. (*See id.* (not prefacing colonoscopy with "recommend" despite doing so on four other treatments)). Second, Bingham offers several articles from medical journals indicating a colonoscopy is a necessary step to properly diagnose bowel disease. (*See* ECF No. 72 at 88-193.) Defendants offer no contradictory medical evidence. Finally, Marks himself admitted a colonoscopy was necessary in his discovery responses. In response to Bingham's request for admission, Marks admitted he recommended a colonoscopy "because it was medically necessary for diagnostic purposes." (*Id.* at 24.) And in response to an interrogatory, Marks stated he felt "a tissue biopsy from a colonoscopy done by a G.I. specialist was needed to finalize the diagnosis." (*Id.* at 53.) Thus, contrary to Defendants' assertion, there is ample evidence in the record demonstrating it was medically necessary for Bingham to receive a colonoscopy.

For these reasons, the Court finds Bingham is likely to succeed on the merits of his underlying deliberate indifference claim.

**ii. Irreparable Harm**

The Court will next address whether Bingham is likely to suffer irreparable harm absent preliminary relief. Defendants argue Bingham cannot show irreparable harm because he delayed seeking a preliminary injunction for years, which implies a lack of urgency. (ECF No. 74 at 9.) While it is true "that a 'long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm,'" *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019) (quoting *Oakland Trib., Inc. v. Chron. Publ'g*, 762 F.2d 1374, 1377 (9th Cir. 1985)), Defendants' argument ignores the progression of Bingham's illness. It is not the case that Bingham sat on his hands for years doing nothing before filing the instant motion.

Rather, as discussed in detail above, Bingham consistently advocated for himself to try and get effective treatment. Once Bingham's grievance was finally denied in July 2023, and it became clear LCC was not going to change his treatment, (*see* ECF No. 74-

5 at 20-22), he promptly filed suit and for a preliminary injunction. (*See* ECF Nos. 1, 3.) Furthermore, Bingham did not suffer a single, discrete injury. He suffered, and continues to suffer, an ongoing injury, and in such cases delay in seeking relief "is not particularly probative." *Cuviello*, 944 F.3d at 833 (quoting *Arc of Cal. v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014)).

In any event, "delay by itself is not a determinative factor in whether the grant of interim relief is just and proper." *Id.* (citation modified) (quoting *Aguayo ex rel. N.L.R.B. v. Tomco Carburetor Co.*, 853 F.2d 744, 750 (9th Cir. 1988)). "[D]elay is but a single factor to consider in evaluating irreparable injury," and "courts are loath to withhold relief *solely on that ground*." *Id.* (emphasis in original) (quoting *Douglas*, 757 F.3d at 990). Thus, even assuming the Court agreed Bingham unduly delayed in seeking preliminary relief, it would merely be one data point in the analysis.

Other, more persuasive, data points the Court considers are Bingham enduring chronic pain for years and likely having his Eighth Amendment rights violated. The Ninth Circuit has held a delay in treatment and suffering from pain can constitute irreparable injury. *See Rodde v. Bonta*, 357 F.3d 988, 999 (9th Cir. 2004) (noting "delayed and/or complete lack of necessary treatment, and increased pain and medical complications" was "compelling evidence" of irreparable harm); *M.R. v. Dreyfus*, 697 F.3d 706, 728 (9th Cir. 2012) (reaffirming irreparable harm "includes pain . . . due to delayed treatment" (quoting *Harris v. Bd. Of Supervisors*, 366 F.3d 754, 766 (9th Cir. 2004))); *see also Von Colln v. Cnty. of Ventura*, 189 F.R.D. 583, 598 (C.D. Cal. 1999) ("Defendants do not argue that pain and suffering is not irreparable harm, nor could they."). So too for "the deprivation of constitutional rights," which "unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

Here, Defendants do not dispute Bingham has suffered from years-long, chronic pain, and the Court has already determined Bingham is likely to succeed on his deliberate indifference claim. Viewed together, the Court finds these facts are sufficient to

demonstrate Bingham will likely suffer irreparable harm absent a preliminary injunction.

**iii. Equities & Public Interest**

The Court will next address the last two *Winter* factors, beginning with public interest. As with irreparable harm, the Ninth Circuit has held "it is always in the public interest to prevent the violation of a party's constitutional rights." *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022) (quoting *Melendres*, 695 F.3d at 1002). As to the balance of the equities, Defendants argue Bingham "is not at risk of suffering any harm" absent injunctive relief. (ECF No. 74 at 10.) The Court has already rejected this argument, however, and a review of the record shows the equities tip sharply in Bingham's favor. Defendants authorized Bingham to receive a colonoscopy nearly three years ago. (*See* ECF No. 73-21 at 29.) Thus, by granting preliminary relief the Court would simply be requiring Defendants to do what they already agree to do. Defendants cannot plausibly claim they would suffer hardship from following their own authorizations.

The Court therefore finds that the equities weigh in favor of granting preliminary relief, and that doing so is in the public interest.

**IV. CONCLUSION**

For all the reasons discussed above, the Court finds "the facts and law clearly favor" Bingham such that the "extraordinary remedy" of a mandatory injunction is appropriate. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (first quoting *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994); and then quoting *Winter v. NRDC*, 555 U.S. 7 (2008)). The Court therefore recommends Bingham's motion for a preliminary injunction be granted.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

**V. RECOMMENDATION AND ORDER**

**IT IS RECOMMENDED** that Bingham's motions for leave to file excess pages, (ECF Nos. 68, 80), be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that Bingham's motion for a preliminary injunction, (ECF No. 70), be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that Defendants be ordered to:

(1) schedule Bingham for the earliest available appointment to receive a colonoscopy and esophagogastroduodenoscopy within 30 days of the District Court's order resolving this report and recommendation;

(2) file with the Court, under seal, a notice indicating when and where Bingham's appointment is scheduled for within 7 days of making the appointment; and

(3) meet with Bingham within 14 days of receiving the results to explain them to him and discuss what his treatment plan will be moving forward.

**DATED**: July 27, 2026

**UNITED STATES MAGISTRATE JUDGE**